

FILED by _____ D.C.

ELECTRONIC

JUN 5, 2012

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. <u>11-20587-CR-SCOLA(s)</u>

18 U.S.C. § 1349
18 U.S.C. § 1347
18 U.S.C. § 371
42 U.S.C. § 1320a-7b(b)(2)
42 U.S.C. § 1320a-7b(b)(1)
18 U.S.C. § 1956(h)
18 U.S.C. § 1957
18 U.S.C. § 1956(a)(1)(B)(i)
18 U.S.C. § 982
18 U.S.C. § 2

**UNITED STATES OF AMERICA**

**vs.**

**ANTONIO MACLI,**
**JORGE MACLI,**
**SANDRA HUARTE,**
**GARY KUSHNER,**
**RAFAEL ALALU,**
**JACQUELINE MORAN,**
**DEREK ALEXANDER,**
**ANTHONY ROBERTS,**
**CURTIS GATES,**
**MADELINE LUCAS, and**
**BISCAYNE MILIEU HEALTH CENTER, INC.,**

**Defendants.**

_____/

## <u>SUPERSEDING INDICTMENT</u>

The Grand Jury charges that:

### <u>GENERAL ALLEGATIONS</u>

At all times relevant to this Superseding Indictment,

1.     The Medicare Program ("Medicare") was a health care program providing benefits to persons who were over the age of sixty-five or disabled. Medicare is administered by

the Centers for Medicare and Medicaid Services ("CMS"), an agency under the United States Department of Health and Human Services.  Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."  Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b) and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f) .

2.       Part B of the Medicare program covered the reimbursement for partial hospitalization programs ("PHPs") connected with the treatment of mental illness.  The treatment program of PHPs closely resembled that of a highly structured, short-term hospital inpatient program, but it was a distinct and organized intensive treatment program that offered less than 24-hour daily care and was designed, in part, to reduce medical costs by treating qualifying individuals outside the hospital setting.

3.       Under the PHP benefit, Medicare covered the following services:  (1) individual and group therapy with physicians or psychologists (or other authorized mental health professionals); (2) occupational therapy; (3) services of social workers, trained psychiatric nurses, and other staff trained to work with psychiatric patients; (4) drugs and biologicals furnished for therapeutic purposes that cannot be self-administered; (5) individualized activity therapies that are not primarily recreational or diversionary; (6) family counseling (for treatment of the patient's condition); (7) patient training and education; and (8) diagnostic services.

4.       Part A of Medicare helped to pay for the care in facilities such as inpatient care in hospitals.  Medicare generally required that the PHP be provided at a facility that is hospital-based or hospital-affiliated, but Medicare also allowed a PHP to be provided in a Community Mental Health Center ("CMHC"), which is a provider type under Part A of Medicare.

5.       Medicare requires that, to qualify for the PHP benefit, the services must be

reasonable and necessary for the diagnosis and active treatment of the individual's condition. The program also must be reasonably expected to improve or maintain the condition and functional level of the patient and to prevent relapse or hospitalization. The program must be prescribed by a physician and furnished under the general supervision of a physician and under an established plan of treatment that meets Medicare requirements.

6.      Typically, a patient who needs this intensive PHP treatment has a long history of mental illness that has been treated. Patients are ordinarily referred either (a) by a hospital after full inpatient hospitalization for severe mental illness or (b) by a doctor who is trying to prevent full inpatient hospitalization for a severely mentally ill patient the doctor has been treating.

7.      Medicare guidelines specifically exclude meals and transportation from coverage under the PHP benefit.

8.      Medicare does not cover programs involving primarily social, recreational, or diversionary activities.

9.      In order to receive payment from Medicare, a CMHC, medical clinic, or physician is required to submit a health insurance claim form to Medicare, called a Form 1450. The claims may be submitted in hard copy or electronically. A CMHC, medical clinic, and physician may contract with a billing company to transmit claims to Medicare on their behalf.

10.      Medicare Part B is administered in Florida by Wisconsin Physicians Services, which, pursuant to contract with the United States Department of Health and Human Services, serves as a contracted carrier to receive, adjudicate and pay Medicare Part B claims submitted to it by Medicare beneficiaries, physicians, or CMHCs. Medicare Part B pays CMHCs and physicians directly for the cost of PHP services furnished to eligible Medicare beneficiaries, provided that the services meet Medicare requirements.

## Defendants and Relevant Individuals and Entities

11.     **BISCAYNE MILIEU HEALTH CENTER, INC.** ("BISCAYNE MILIEU") was a Florida corporation incorporated by **ANTONIO MACLI** in 1996.  Beginning in or around 1996, and continuing through in or around January 2010, **BISCAYNE MILIEU** was located at 13499 Biscayne Boulevard, Suite 101, North Miami, Florida 33181.  In or around January 2010, **BISCAYNE MILIEU** relocated to 1000 Park Centre Boulevard, Suite 138, Miami, Florida 33169.  **BISCAYNE MILIEU** was a CMHC and operated a purported PHP.

12.     Quality Care Network, Inc. ("Quality Care") was a Florida corporation incorporated by **ANTONIO MACLI** in 1997.  Beginning in or around 1997, and continuing through in or around January 2010, Quality Care's listed address was 13499 Biscayne Boulevard, Suite 101, North Miami, Florida 33181.  In or around January 2010, Quality Care's listed address changed to 1000 Park Centre Boulevard, Suite 150, Miami, Florida 33169.  Quality Care purported to administer management services to **BISCAYNE MILIEU**.

13.     Global Management Network, Inc. ("Global") was a Florida corporation incorporated by **ANTONIO MACLI** in 1998.  Beginning in or around 1998, and continuing through in or around January 2010, Global's listed address was 13499 Biscayne Boulevard, Suite 201, North Miami, Florida 33181.  In or around January 2010, Global's listed address changed to 1000 Park Centre Boulevard, Suite 150, Miami, Florida 33169.

14.     North Biscayne Investment, Inc. ("North Biscayne") was a Florida corporation incorporated by **SANDRA HUARTE** in 1996.  Beginning in or around 2001, and continuing through in or around 2002, North Biscayne's listed address was 13499 Biscayne Boulevard, Suite 201, North Miami, Florida 33181.  In or around 2003, North Biscayne's listed address changed to 10743 SW 142nd Street, Miami, Florida 33186.  North Biscayne purported to be the

4

"landlord" for **BISCAYNE MILIEU**.

15.     Tekboard Educational System, Inc. ("Tekboard") was a Florida corporation incorporated by **ANTONIO MACLI** in 2009.  Beginning in or around 2009, and continuing through in or around July 2010, Tekboard's listed address was 3600 Yacht Club Drive, T2 1202, Aventura, Florida 33180.  In or around July 2010, Tekboard's listed address changed to 1000 Park Centre Boulevard, Suite 150, Miami, Florida 33169.

16.     Defendant **ANTONIO MACLI** was the CEO and owner of **BISCAYNE MILIEU**.  **ANTONIO MACLI** was also the CEO of Quality Care and Global until in or around 2007.  **ANTONIO MACLI** was also the CEO and owner of Tekboard.

17.     Defendant **JORGE MACLI**, the son of **ANTONIO MACLI**, was the manager, COO, and at one time, the president, of **BISCAYNE MILIEU** and a purported employee of Quality Care.  In or around 2007, **JORGE MACLI** became the president of Global, and in or around 2009, he became its CEO.  In or around 2009, **JORGE MACLI** also was the vice president of Tekboard.

18.     Defendant **SANDRA HUARTE**, the daughter of **ANTONIO MACLI**, was an employee of **BISCAYNE MILIEU** responsible for submitting claims to Medicare.  **HUARTE** was also a purported employee of Quality Care.  In or around 2010, **HUARTE** became the vice-president of Global.   **HUARTE** was also the CEO and sole officer of North Biscayne.  In or around 2009, **HUARTE** was the treasurer of Tekboard.

19.     Defendant **GARY KUSHNER,** was a medical doctor licensed in the State of Florida and an attending physician at **BISCAYNE MILIEU. KUSHNER** also referred patients to **BISCAYNE MILIEU** from various hospitals where he had physician privileges.

20.     Carmen Mercado was a registered nurse in the State of Florida and the "Program

Coordinator" at **BISCAYNE MILIEU.**

21.     Defendant **RAFAEL ALALU** was a licensed mental health counselor in the State of Florida and the "Clinical Director" at **BISCAYNE MILIEU.**

22.     Defendant **MADELINE LUCAS**, as well as Barbara Morales, Debora DeJesus, and Gala Myriam Onofre, a/k/a "Consuelo Onofre," were licensed mental health counselors in the State of Florida and therapists at **BISCAYNE MILIEU.**

23.     Manotte Bazile was a social worker and licensed intern who worked as a therapist for **BISCAYNE MILIEU.**

24.     Thomas Hamer was a licensed marriage and family counselor in the State of Florida and a therapist at **BISCAYNE MILIEU.**

25.     Wilson Arteaga was a "Supervisor of Case Management" at **BISCAYNE MILIEU.**

26.     Defendant **JACQUELINE MORAN** was an employee at **BISCAYNE MILIEU** responsible for submitting claims to Medicare.

27.     Defendant **CURTIS GATES,** defendant **DEREK ALEXANDER**, defendant **ANTHONY ROBERTS**, Wyatt Barnfield, III, Larry Word, James Wynn, a/k/a "Riley Wynn," Robert Revels, John Jackson, Sabrina Pressley, James Edwards, Gregory Murphy, and Roselyn Nicole Charles were patient recruiters  at **BISCAYNE MILIEU.**

## COUNT 1
### Conspiracy to Commit Health Care Fraud
### (18 U.S.C. § 1349)

1.     Paragraphs 1 through 26 of the General Allegations section of this Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

2.     From in or around January 2007, and continuing through in or around August

6

2011, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the defendants,

**ANTONIO MACLI,
JORGE MACLI,
SANDRA HUARTE,
GARY KUSHNER,
RAFAEL ALALU,
JACQUELINE MORAN,
MADELINE LUCAS,
and
BISCAYNE MILIEU HEALTH CENTER, INC.,**

did knowingly and willfully combine, conspire, confederate and agree with each other, and with others known and unknown to the Grand Jury, to violate Title 18, United States Code, Section 1347, that is, to execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services.

## PURPOSE OF THE CONSPIRACY

3.      It was the purpose of the conspiracy for **ANTONIO MACLI, JORGE MACLI, SANDRA HUARTE, GARY KUSHNER, RAFAEL ALALU, JACQUELINE MORAN, MADELINE LUCAS, BISCAYNE MILIEU,** and their co-conspirators to unlawfully enrich themselves by, among other things:  (a) submitting false and fraudulent claims to Medicare through **BISCAYNE MILIEU** for services that were medically unnecessary, that were not eligible for Medicare reimbursement, and that were never provided; (b) offering and paying kickbacks and bribes to patient recruiters for recruiting Medicare beneficiaries who would attend

BISCAYNE MILIEU;  (c) paying and receiving kickbacks and bribes to ensure the attendance of these ineligible Medicare beneficiaries at **BISCAYNE MILIEU**; (d) concealing the submission of false and fraudulent claims to Medicare, the receipt and transfer of the proceeds from the fraud, and the payment of kickbacks and bribes to patient recruiters and Medicare beneficiaries; and (e) diverting proceeds of the fraud for the personal use and benefit of the defendants and their co-conspirators in the form of compensation and other remuneration.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendants and their co-conspirators sought to accomplish the object and purpose of the conspiracy included, among others, the following:

4.    **ANTONIO MACLI** operated **BISCAYNE MILIEU** as a company registered in the State of Florida.

5.    **ANTONIO MACLI** employed his son, **JORGE MACLI** as the manager of **BISCAYNE MILIEU**.

6.    **ANTONIO MACLI** also employed his daughter, **SANDRA HUARTE**, who was responsible for submitting **BISCAYNE MILIEU's** PHP claims to Medicare.

7.    **ANTONIO MACLI, JORGE MACLI** and **SANDRA HUARTE** maintained a Medicare provider number for **BISCAYNE MILIEU** in order to submit Medicare claims for PHP services.

8.    **ANTONIO MACLI** and **JORGE MACLI** caused the payment of kickbacks to recruiters, including Wilson Arteaga, James Edwards, John Jackson, Sabrina Pressley, and others, in exchange for those recruiters providing Medicare beneficiaries to attend **BISCAYNE MILIEU**.  In some instances, the patient recruiters used a portion of the kickback payments they received to pay kickbacks to the ineligible patients they sent to **BISCAYNE MILIEU**.

8

9.      **ANTONIO MACLI** and **JORGE MACLI** designated these recruiters as "Case Managers," in order to disguise the true nature of their employment at **BISCAYNE MILIEU**, which was to recruit patients for its PHP.

10.     **ANTONIO MACLI** and **JORGE MACLI** caused their recruiters to recruit patients from outside the State of Florida.  **ANTONIO MACLI, JORGE MACLI,** Wilson Arteaga, and others caused to be paid, and paid, transportation costs for the out-of-state patients to be brought to the State of Florida to attend the PHP at **BISCAYNE MILIEU.**

11.     **JORGE MACLI** paid additional monies to some of the recruiters, including John Jackson, Sabrina Pressley, and others for the purpose of purchasing or leasing halfway houses to board the patients they recruited to attend the PHP at **BISCAYNE MILIEU.**

12.     John Jackson, Sabrina Pressley, and others purchased, leased or managed houses in order to house some of the patients attending **BISCAYNE MILIEU's** PHP.  Jackson, Pressley, and others collected rent and other monies from the patients they recruited to attend **BISCAYNE MILIEU's** PHP.  Additionally, Arteaga had patients assign their Social Security Disability payments over to him as a means of controlling these Medicare beneficiaries and ensuring their continued attendance at **BISCAYNE MILIEU.**

13.     Wilson Arteaga and others forced their patients to attend **BISCAYNE MILIEU's** PHP by threatening to evict them from their halfway houses if they did not attend the PHP at **BISCAYNE MILIEU**.  Because many of these patients were recruited and transported from outside of the State of Florida, if evicted from the halfway house, they would have become homeless.

14.     **ANTONIO MACLI, JORGE MACLI** and **SANDRA HUARTE** purchased vans in order to transport the recruited patients living in the various halfway houses to and from

the program each day.

15.    **ANTONIO MACLI** and **JORGE MACLI** directed the patient recruiters to fabricate "invoices" to make it appear as if the patient recruiters were providing legitimate "case management" services to the patients they recruited in order to disguise the kickback payments. James Edwards, Sabrina Pressley, and other co-conspirators routinely sent these fake invoices to **BISCAYNE MILIEU** as instructed.

16.    **GARY KUSHNER** and others acted as attending physicians for **BISCAYNE MILIEU's** patients, signed charts authorizing treatment, or continued treatment, for patients who were not eligible for PHP treatment, often without examining the patients or the charts. **KUSHNER** and others authorized **BISCAYNE MILIEU** to bill Medicare using their Medicare identifiers as attending physicians to legitimize fraudulent claims. **KUSHNER** further referred a number of patients to **BISCAYNE MILIEU** who did not qualify for PHP treatment.

17.    **JAQUELINE MORAN** and Carmen Mercado admitted patients into the PHP at **BISCAYNE MILIEU**, and fraudulent claims were submitted to Medicare on behalf of those patients before the patients had been evaluated by a qualified clinician or psychiatrist to determine whether they qualified for PHP treatment.  Some of the patients admitted to the program suffered from dementia or Alzheimer's disease, and therefore did not qualify for PHP treatment.

18.    **ANTONIO MACLI**, **JORGE MACLI**, and **SANDRA HUARTE** caused Roselyn Nicole Charles and others to recruit Haitian patients to attend **BISCAYNE MILIEU's** PHP, who did not qualify for PHP treatment.  **ANTONIO MACLI, JORGE MACLI**, and **SANDRA HUARTE** provided an incentive for the Haitian patients to attend the program by promising to assist them with obtaining their United States citizenship.  **ANTONIO MACLI**,

**JORGE MACLI, SANDRA HUARTE,** and **RAFAEL ALALU** directed **MADELINE LUCAS,** Manotte Bazile and others to fill-out the immigration forms for some of the Haitian patients at **BISCAYNE MILIEU,** falsely and fraudulently indicating that the patients had mental illnesses, which enabled the Haitian patients to avoid taking their citizenship tests.

19.    **ANTONIO MACLI, JORGE MACLI, SANDRA HUARTE,** and **JACQUELINE MORAN** also routinely caused the submission of fraudulent claims to Medicare for individual therapy sessions and group therapy sessions that the patients allegedly attended when the patients did not, in fact, attend these sessions.

20.    **ANTONIO MACLI, JORGE MACLI, SANDRA HUARTE, RAFAEL ALALU** and others caused the alteration of patient files, including the fabrication of therapist notes, to make it falsely appear that patients had attended group or individual therapy sessions they purported to conduct. **ALALU, MADELINE LUCAS,** Manotte Bazile, Morales, De Jesus, Onofre, and Hamer also altered patient files and therapist notes to make it falsely appear that patients being treated by **BISCAYNE MILIEU** qualified for PHP treatment. **ALALU, LUCAS,** Morales, De Jesus, Onofre, and Hamer also routinely cut-and-paste group therapy notes and Individual Diagnostic Assessments ("IDAs") from one patient to another, fraudulently documenting false quotations from the patients and therapy evaluations.

21.    **ANTONIO MACLI** listed Quality Care in the Medicare application as purportedly providing "management services" to **BISCAYNE MILIEU.** In reality, Quality Care's leadership and management were identical to that of **BISCAYNE MILIEU,** and Quality Care provided no services to **BISCAYNE MILIEU.** Rather, Quality Care was used as a vehicle to conceal the transfer of health care fraud proceeds from **BISCAYNE MILIEU** to **ANTONIO MACLI, JORGE MACLI, SANDRA HUARTE,** and others.

22.     **ANTONIO MACLI** and **JORGE MACLI** used Global as a vehicle to conceal the transfer of health care fraud proceeds from **BISCAYNE MILIEU** to himself, **JORGE MACLI, SANDRA HUARTE**, and others.

23.     **ANTONIO MACLI** listed North Biscayne as the "landlord" for **BISCAYNE MILIEU** on documents he filed with Medicare.  **SANDRA HUARTE** was the CEO and sole director of North Biscayne.  In reality, North Biscayne was not the landlord for **BISCAYNE MILIEU**, as it did not own either property where **BISCAYNE MILIEU** was located. **HUARTE** and **ANTONIO MACLI** used North Biscayne as a vehicle to further conceal the transfer of health care fraud proceeds from **BISCAYNE MILIEU** to themselves and others.

24.     From in or around January 2007 and continuing through in or around August 2011, **ANTONIO MACLI, JORGE MACLI, SANDRA HUARTE, GARY KUSHNER, RAFAEL ALALU, MADELINE LUCAS, JACQUELINE MORAN,** Carmen Mercado, Barbara Morales, Debora De Jesus, Gala Myriam Onofre, Thomas Hamer, Wilson Arteaga, James Edwards, John Jackson, Sabrina Pressley, Manotte Bazile, and others caused false and fraudulent claims to be submitted to Medicare for services purportedly provided at **BISCAYNE MILIEU** in an amount exceeding $57 million.  As a result of these false and fraudulent claims, Medicare paid **BISCAYNE MILIEU** approximately $11.4 million.

25.     **ANTONIO MACLI, JORGE MACLI, SANDRA HUARTE, GARY KUSHNER, RAFAEL ALALU, MADELINE LUCAS, JACQUELINE MORAN,** Carmen Mercado, Barbara Morales, Debora De Jesus, Gala Myriam Onofre, Thomas Hamer, Wilson Arteaga, James Edwards, John Jackson, Sabrina Pressley, Manotte Bazile, and others caused the transfer and disbursement of illicit proceeds derived from the fraudulent billing scheme to themselves and others.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS 2-14
### Health Care Fraud
### (18 U.S.C. §§ 1347 and 2)

1.      Paragraphs 1 through 26 of the General Allegations section of this Superseding Indictment are realleged and incorporated by reference as if fully set forth herein.

2.      From in or around January 2007, and continuing through in or around August 2011, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the defendants,

**ANTONIO MACLI,**
**JORGE MACLI,**
**SANDRA HUARTE,**
**GARY KUSHNER,**
**RAFAEL ALALU,**
**JACQUELINE MORAN,**
**and**
**BISCAYNE MILIEU HEALTH CENTER, INC.,**

in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud Medicare, a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b) and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, Medicare, that is, the defendants, through **BISCAYNE MILIEU,** submitted and caused the submission of false and fraudulent claims to Medicare, seeking reimbursement for the cost of PHP services.

## PURPOSE OF THE SCHEME AND ARTIFICE

3.      It was the purpose of the scheme and artifice for **ANTONIO MACLI, JORGE MACLI, SANDRA HUARTE, GARY KUSHNER, RAFAEL ALALU, JACQUELINE**

13

**MORAN,** Carmen Mercado, Barbara Morales, Gala Myriam Onofre, Thomas Hamer, James Edwards, John Jackson, Sabrina Pressley, Manotte Bazile, and their accomplices to unlawfully enrich themselves by, among other things:   (a) submitting false and fraudulent claims to Medicare through **BISCAYNE MILIEU** for services that were medically unnecessary, that were not eligible for Medicare reimbursement, and that were never provided; (b) offering and paying kickbacks and bribes to patient recruiters for recruiting Medicare beneficiaries who would attend **BISCAYNE MILIEU**; (c) paying kickbacks and bribes to ensure the attendance of these ineligible Medicare beneficiaries at **BISCAYNE MILIEU**; (d) concealing the submission of false and fraudulent claims to Medicare, the receipt and transfer of the proceeds from the fraud, and the payment of kickbacks and bribes to patient recruiters and Medicare beneficiaries; and (e) diverting proceeds of the fraud for the personal use and benefit of **ANTONIO MACLI**, **JORGE MACLI, SANDRA HUARTE, GARY KUSHNER, RAFAEL ALALU, JACQUELINE MORAN,** Carmen Mercado, Barbara Morales, Gala Myriam Onofre, Thomas Hamer, James Edwards, John Jackson, Sabrina Pressley, Manotte Bazile, and their accomplices in the form of compensation and other remuneration.

## THE SCHEME AND ARTIFICE

4.      The allegations in Paragraphs 4 through 25 of the Manner and Means section of Count 1 of this Superseding Indictment are realleged and incorporated by reference as though fully set forth herein as a description of the scheme and artifice.

## ACTS IN EXECUTION OR ATTEMPTED EXECUTION OF
## THE SCHEME AND ARTIFICE

5.      On or about the dates set forth below, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the defendants listed below, each aided and abetted by one another, and by others known and unknown to the Grand Jury, in connection with

the delivery of, and payment for, health care benefits, items, and services, did knowingly and

willfully execute, and attempt to execute, a scheme and artifice to defraud a health care benefit

program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is,

Medicare, and obtain, by means of materially false and fraudulent pretenses, representations, and

promises, money and property owned by, and under the custody and control of, Medicare, in

connection with the delivery of and payment for health care benefits, items, and services, as

listed below:

| Count | Defendant(s) | Beneficiary Name | Services Billed | Listed Dates of Service | Approx. Date of Claim | Approx. Amt. Billed | Claim Number |
|---|---|---|---|---|---|---|---|
| 2 | **ANTONIO MACLI, JORGE MACLI, SANDRA HUARTE, GARY KUSHNER, BISCAYNE MILIEU** | E.S. | Individual Therapy, Group Psychotherapy, Training & Education Services | 4/3/09 through 4/8/09 | 4/13/09 | $7,220 | 20910300747204NTA |
| 3 | **ANTONIO MACLI, JORGE MACLI, SANDRA HUARTE, JACQUELINE MORAN, RAFAEL ALALU, BISCAYNE MILIEU** | C.S. | Group Psychotherapy | 2/2/10 | 2/8/10 | $400 | 21111601778408NTAU |

15

| Count | Defendant(s) | Beneficiary Name | Services Billed | Listed Dates of Service | Approx. Date of Claim | Approx. Amt. Billed | Claim Number |
|---|---|---|---|---|---|---|---|
| 4 | **ANTONIO MACLI, JORGE MACLI, SANDRA HUARTE, RAFAEL ALALU, BISCAYNE MILIEU** | B.H. | Individual Therapy, Group Psychotherapy, Training & Education Services | 4/19/10 through 4/23/10 | 4/26/10 | $1,900 | 211116009845 08NTAU |
| 5 | **ANTONIO MACLI, JORGE MACLI, SANDRA HUARTE, JACQUELINE MORAN, BISCAYNE MILIEU** | F.F. | Group Psychotherapy | 5/25/10 | 6/1/10 | $400 | 211116015906 08NTAU |
| 6 | **ANTONIO MACLI, JORGE MACLI, SANDRA HUARTE, JACQUELINE MORAN, BISCAYNE MILIEU** | M.M. | Group Psychotherapy | 5/25/10 | 6/1/10 | $400 | 211116006813 08NTAU |

16

| Count | Defendant(s) | Benefi-ciary Name | Services Billed | Listed Dates of Service | Approx. Date of Claim | Approx. Amt. Billed | Claim Number |
|---|---|---|---|---|---|---|---|
| 7 | ANTONIO MACLI, JORGE MACLI, SANDRA HUARTE, BISCAYNE MILIEU | S.O. | Individual Therapy | 10/11/10 | 10/22/10 | $100 | 21029500180804NTA |
| 8 | ANTONIO MACLI, JORGE MACLI, SANDRA HUARTE, BISCAYNE MILIEU | S.O. | Individual Therapy, Group Psychotherapy, Training & Education Services | 10/29/10 through 11/4/10 | 11/15/10 | $1,500 | 21031900378404NTA |
| 9 | ANTONIO MACLI, JORGE MACLI, SANDRA HUARTE, RAFAEL ALALU, BISCAYNE MILIEU | A.W. | Individual Therapy, Group Psychotherapy, Training & Education Services | 11/18/10 through 11/20/10 | 11/22/10 | $1,100 | 21032600591204NTA |

| Count | Defendant(s) | Benefici-ary Name | Services Billed | Listed Dates of Service | Approx. Date of Claim | Approx. Amt. Billed | Claim Number |
|---|---|---|---|---|---|---|---|
| 10 | ANTONIO MACLI, JORGE MACLI, SANDRA HUARTE, RAFAEL ALALU, BISCAYNE MILIEU | A.W. | Group Psychotherapy, Training & Education Services | 11/22/10 through 11/25/10 | 11/29/10 | $1600 | 210333005132 04NTA |
| 11 | ANTONIO MACLI, JORGE MACLI, SANDRA HUARTE, RAFAEL ALALU, JACQUELINE MORAN, BISCAYNE MILIEU | K.T. | Individual Therapy, Group Psychotherapy, Training & Education Services | 12/7/10 through 12/16/10 | 12/20/10 | $3,100 | 210354006163 04NTA |
| 12 | ANTONIO MACLI, JORGE MACLI, SANDRA HUARTE, JACQUELINE MORAN, BISCAYNE MILIEU | N.S. | Group Psychotherapy, Training & Education Services | 1/22/11 | 1/24/11 | $400 | 211024005264 04NTA |

18

| Count | Defendant(s) | Benefi-ciary Name | Services Billed | Listed Dates of Service | Approx. Date of Claim | Approx. Amt. Billed | Claim Number |
|---|---|---|---|---|---|---|---|
| 13 | **ANTONIO MACLI, JORGE MACLI, SANDRA HUARTE, GARY KUSHNER, RAFAEL ALALU, BISCAYNE MILIEU** | G.D. | Individual Therapy, Group Psychotherapy, Training & Education Services | 1/31/11 through 2/5/11 | 2/7/11 | $2,300 | 21103800398804NTA |
| 14 | **ANTONIO MACLI, JORGE MACLI, SANDRA HUARTE, BISCAYNE MILIEU** | C.O. | Group Psychotherapy, Training & Education Services | 2/9/11 | 2/14/11 | $400 | 21104500536704NTA |

In violation of Title 18, United States Code, Sections 1347 and 2.

## COUNT 15
### Conspiracy to Receive and Pay Health Care Kickbacks
### (18 U.S.C. § 371)

1.      Paragraphs 1 through 18, 25, and 27 of the General Allegations section of this Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

2.      From in or around 2007, and continuing through in or around August 2011, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the

defendants,

**ANTONIO MACLI,**
**JORGE MACLI,**
**SANDRA HUARTE,**
**DEREK ALEXANDER,**
**ANTHONY ROBERTS,**
**CURTIS GATES,**
**and**
**BISCAYNE MILIEU HEALTH CENTER, INC.,**

did knowingly and willfully combine, conspire, confederate and agree with each other and with others known and unknown to the Grand Jury, to commit certain offenses against the United States, that is,

a.  To violate Title 42, United States Code, Section 1320a-7b(b)(2), by knowingly and willfully offering and paying any remuneration, including, kickbacks, bribes, and rebates, directly and indirectly, overtly and covertly, in cash and in kind, to any person to induce such person to refer an individual to **BISCAYNE MILIEU** for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part by a Federal health care program, that is, Medicare; and to induce such person to purchase, lease, order, and arrange for and recommend purchasing, leasing, and ordering any good, facility, service, and item for which payment may be made in whole and in part under a Federal health care program, that is, Medicare; and

b.  To violate Title 42, United States Code, Section 1320a-7b(b)(1), by knowingly and willfully soliciting and receiving remuneration, including any kickback, bribe, and rebate, directly and indirectly, overtly and covertly, in cash and in kind, in return for referring an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part under a Federal health care program, that is, Medicare; and in return for purchasing, leasing, ordering, and arranging

20

for and recommending purchasing, leasing, and ordering of any good, facility, service, and item for which payment may be made in whole and in part under a Federal health care program, that is, Medicare.

## PURPOSE OF THE CONSPIRACY

3.      It was a purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by paying and receiving kickbacks and bribes in exchange for (a) securing the attendance of Medicare beneficiaries at **BISCAYNE MILIEU** and (b) providing beneficiary information that was used to submit claims to Medicare.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendants and their co-conspirators sought to accomplish the object and purpose of the conspiracy included, among others, the following:

4.      **ANTONIO MACLI** operated **BISCAYNE MILIEU** as a purported CMHC offering PHP services in Miami, Florida.

5.      **ANTONIO MACLI** employed his son, **JORGE MACLI**, as the manager of **BISCAYNE MILIEU**.

6.      **ANTONIO MACLI** also employed his daughter, **SANDRA HUARTE**, who was responsible for submitting **BISCAYNE MILIEU's** PHP claims to Medicare.

7.      **ANTONIO MACLI, JORGE MACLI,** and **SANDRA HUARTE** maintained a Medicare provider number for **BISCAYNE MILIEU** in order to submit Medicare claims for PHP services.

8.      **ANTONIO MACLI** and **JORGE MACLI** caused the payment of kickbacks to patient recruiters, including **DEREK ALEXANDER, ANTHONY ROBERTS, CURTIS GATES,** Wilson Arteaga, Wyatt Barnfield, III, Gregory Murphy, Larry Word, James Wynn,

21

Robert Revels, James Edwards, John Jackson, Sabrina Pressley, Roselyn Nicole Charles, and others, in exchange for those patient recruiters providing Medicare beneficiaries to attend **BISCAYNE MILIEU's** PHP.  In some instances, the patient recruiters used a portion of the kickback payments they received to pay kickbacks to the patients they sent to **BISCAYNE MILIEU's** PHP.

9.      **ANTONIO MACLI, JORGE MACLI,** and **SANDRA HUARTE** maintained charts for the purpose of determining the amount of kickback payments owed to the patient recruiters by listing the patients that each patient broker recruited to attend the PHP at **BISCAYNE MILIEU,** and the number of days that each patient attended the program in a given pay period.  **ANTONIO MACLI, JORGE MACLI, HUARTE,** Jackson and other patient recruiters referred to these charts as the "money sheets."

10.      The patient recruiters routinely went to **SANDRA HUARTE,** and often times to **JORGE MACLI,** when they had an issue with the amount of kickback monies received for a particular pay period.  **HUARTE** resolved these issues by checking the "money sheets" against the daily attendance logs signed by the patients to determine the number of days a particular patient attended the program so that she could determine the amount of the kickback payment owed to the patient broker.

11.      **ANTONIO MACLI** and **JORGE MACLI** designated these patient recruiters, with the exception of Robert Revels, John Jackson, and Roselyn Nicole Charles, as "Case Managers," in order to disguise the true nature of their employment at **BISCAYNE MILIEU,** which was to recruit patients for its PHP.  Because Robert Revels lived outside of the State of Florida, and therefore could not perform any alleged "case management" services for patients attending **BISCAYNE MILIEU, ANTONIO MACLI** and **JORGE MACLI** designated Revels

as a "Program Liaison," a title that was given to him to disguise the true nature of his employment at **BISCAYNE MILIEU** as a patient broker.  Because Roselyn Nicole Charles was already working in the medical records department at **BISCAYNE MILIEU**, **ANTONIO MACLI**, **JORGE MACLI**,  and **SANDRA HUARTE** kept track of Charles' recruited patients on the "money sheets" under Charles' daughter's initials, as she could not be designated as a "Case Manager" to conceal her recruitment of Haitian patients for the program.  Because John Jackson was already a therapist and "Clinical Director" at **BISCAYNE MILIEU**, Jackson could not be designated as a "Case Manager."  Consequently, **ANTONIO MACLI, JORGE MACLI** and **SANDRA HUARTE** designated Sabrina Pressley as the "Case Manager" for patients that both she and Jackson recruited for the program.

12.    **ANTONIO MACLI** and **JORGE MACLI** caused their patient recruiters to recruit patients from outside the State of Florida.  **ANTONIO MACLI, JORGE MACLI,** Wilson Arteaga, Robert Revels, and others caused to be paid, and paid, one-way transportation costs for the out-of-state patients to be brought to the State of Florida to attend the PHP at **BISCAYNE MILIEU**.

13.    **JORGE MACLI** paid additional monies to some of the patient recruiters, including **ANTHONY ROBERTS**, Larry Word, Gregory Murphy, John Jackson, Sabrina Pressley, and others for the purpose of purchasing or leasing halfway houses to board the patients they recruited to attend the PHP at **BISCAYNE MILIEU**.

14.    **ANTHONY ROBERTS,** Wilson Arteaga, Larry Word, Gregory Murphy, John Jackson, Sabrina Pressley, and others purchased, leased or managed houses in order to house some of the patients attending **BISCAYNE MILIEU's** PHP.  **ROBERTS,** Arteaga, Word, Murphy, Jackson, Pressley, and others collected rent and other monies from the patients they

recruited to attend **BISCAYNE MILIEU's** PHP.   Additionally, Arteaga and Jackson had patients assign their Social Security Disability payments over to them as a means of controlling these Medicare beneficiaries and ensuring their continued attendance at **BISCAYNE MILIEU**.

15.    **ANTHONY ROBERTS,** Wilson Arteaga, Larry Word, Gregory Murphy, and others forced their patients to attend **BISCAYNE MILIEU's** PHP by threatening to evict them from their boarding houses if they did not attend the PHP at **BISCAYNE MILIEU**.  Because many of these patients were recruited and transported from outside of the State of Florida, if evicted from the boarding house, they would have become homeless.

16.    **ANTONIO MACLI** and **JORGE MACLI** directed the "Case Managers" to fabricate "invoices" to make it appear as if the patient recruiters were providing legitimate "case management" services to the patients they recruited in order to disguise the kickback payments.

## OVERT ACTS

In furtherance of the conspiracy, and to accomplish its objects and purpose, at least one of the co-conspirators committed and caused to be committed in the Southern District of Florida at least one of the following overt acts, among others:

1.    On or about August 6, 2007, **ANTONIO MACLI** wrote check number 3413 in the approximate amount of $320 from the **BISCAYNE MILIEU** corporate bank account at Bank of America, account number ending in 5339 to James Edwards.

2.    On or about August 15, 2007, **CURTIS GATES** negotiated a check number 3424 in the approximate amount of $3,500 written to **GATES** from the **BISCAYNE MILIEU** Bank of America account ending in 5339 to a company called Tri County Placement, which was controlled by **GATES**.

3.    On or about September 11, 2008, **ANTONIO MACLI** wrote check number

3936 in the approximate amount of $4,000 from the **BISCAYNE MILIEU** corporate bank account at Bank of America, account number ending in 5339 to **ANTHONY ROBERTS**.

    4.      On or about March 3, 2009, **ANTHONY ROBERTS** negotiated a check number 4332 in the approximate amount of $4,000 written to **ROBERTS** from the **BISCAYNE MILIEU** Bank of America account ending in 5339.

    5.      On or about August 14, 2009, **JORGE MACLI** wrote check number 4661 in the approximate amount of $397 from the **BISCAYNE MILIEU** corporate bank account at Bank of America, account number ending in 5339 to James Wynn.

    6.      On or about May 13, 2010, **JORGE MACLI** wrote check number 5277 in the approximate amount of $700 from the **BISCAYNE MILIEU** corporate bank account at Bank of America, account number ending in 5339 to Larry Word.

    7.      On or about June 22, 2010, **DEREK ALEXANDER** negotiated a check number 5353 in the approximate amount of $1,500 written to **ALEXANDER** from the **BISCAYNE MILIEU** Bank of America account ending in 5339.

All in violation of Title 18, United States Code, Section 371.

## COUNTS 16 – 26
### Payment of Kickbacks in Connection with a Federal Health Care Program
### (42 U.S.C. § 1320a-7b(b)(2)(A))

    1.      Paragraphs 1 through 18, 25, and 27 of the General Allegations section of this Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

    2.      On or about the dates enumerated below as to each count, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the defendants,

**ANTONIO MACLI**
**and**

**JORGE MACLI,**

did knowingly and willfully offer and pay remuneration, that is, kickbacks and bribes, directly and indirectly, overtly and covertly, in the form of checks and direct deposits, to the patient recruiters listed below to induce such patient recruiters to refer individuals to **BISCAYNE MILIEU** for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part under a Federal health care program, that is, Medicare:

| Count | Approximate Date of Payment | Check Number | Approximate Amount of Kickback Paid | Patient Recruiter |
|-------|------------------------------|--------------|--------------------------------------|-------------------|
| 16 | 8/15/07 | 3424 | $3,500 | **CURTIS GATES** |
| 17 | 12/30/09 | 4935 | $3,500 | Wilson Arteaga |
| 18 | 2/24/10 | 5170002404 | $2,280 | Gregory Murphy |
| 19 | 2/24/10 | 5170002400 | $270 | James Edwards |
| 20 | 4/21/10 | 5170002498 | $1,020 | Wyatt Barnfield, III |
| 21 | 4/21/10 | 5170002496 | $990 | **DEREK ALEXANDER** |
| 22 | 5/19/10 | 5170002545 | $2,943 | James Wynn |
| 23 | 5/19/10 | 5277 | $700 | Larry Word |
| 24 | 6/3/10 | 5170002579 | $3,720 | Sabrina Pressley |
| 25 | 6/30/10 | Direct Deposit | $2,310 | **ANTHONY ROBERTS** |
| 26 | 6/30/10 | Direct Deposit | $1,000 | Robert Revels |

26

In violation of Title 42, United States Code, Section 1320a-7b(b)(2)(A).

## COUNTS 27- 29
### Receipt of Kickbacks in Connection with a Federal Health Care Program
### (42 U.S.C. § 1320a-7b(b)(1)(A))

1.      Paragraphs 1 through 18, 25, and 27 of the General Allegations section of this Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

2.      On or about the dates enumerated below as to each count, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the defendants listed below did knowingly and willfully solicit and receive remuneration, that is, kickbacks and bribes, directly and indirectly, overtly and covertly, in the form of checks, in return for referring individuals to **BISCAYNE MILIEU** for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part under a Federal health care program, that is, Medicare:

| Count | Approximate Date of Payment | Defendant | Check Number | Approximate Amount of Kickback Paid |
|---|---|---|---|---|
| 27 | 8/15/07 | **CURTIS GATES** | 3424 | $3,500 |
| 28 | 4/21/10 | **DEREK ALEXANDER** | 5170002496 | $990 |
| 29 | 6/30/10 | **ANTHONY ROBERTS** | Direct Deposit | $2,310 |

In violation of Title 42, United States Code, Section 1320a-7b(b)(1)(A).

## COUNT 30
### Conspiracy to Commit Money Laundering
### (18 U.S.C. § 1956(h))

1.      Paragraphs 1 through 18 of the General Allegations section of this Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

27

2.      From in or around 2007, and continuing through in or around August 2011, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**ANTONIO MACLI,**
**JORGE MACLI,**
**and**
**SANDRA HUARTE,**

did  knowingly and willfully combine, conspire, and agree with each other and with other persons, known and unknown to the Grand Jury, to commit offenses against the United States in violation of Title 18, United States Code, Sections 1956 and Section 1957, that is:

a.      to conduct financial transactions, affecting interstate commerce, involving the proceeds of specified unlawful activity, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, and knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

b.      to engage in monetary transactions by, through, and to financial institutions, affecting interstate commerce, such transactions involving criminally derived property of a value greater than $10,000 and such property having been derived from specified unlawful activity, in violation of Title 18, United States Code, Section 1957.

It is further alleged that the specified unlawful activity is health care, in violation of Title 18, United States Code, Section 1347.

## PURPOSE OF THE CONSPIRACY

3.      It was a purpose of the conspiracy for the defendants and their co-conspirators to

engage in money laundering for the purpose of (1) unlawfully enriching themselves and their co-conspirators; and (2) concealing and disguising the nature, location, source, ownership, and control of the proceeds of their health care fraud.

## MANNER AND MEANS

The manner and means by which the defendants and their co-conspirators sought to accomplish the object and purpose of the conspiracy included, among others, the following:

4.     **ANTONIO MACLI, JORGE MACLI** and **SANDRA HUARTE** maintained several accounts at various banks for **BISCAYNE MILIEU,** Quality Care, Global, North Biscayne, Tekboard, and other companies.

5.     **ANTONIO MACLI** and **JORGE MACLI** received deposits from Medicare into **BISCAYNE MILIEU's** main account at Bank of America, account number ending in 8287 (the "Main Account").  **ANTONIO MACLI** and **JORGE MACLI** were joint signors on the Main Account.

6.     **ANTONIO MACLI** and **JORGE MACLI** transferred the bulk of the fraudulent Medicare proceeds from **BISCAYNE MILIEU's** Main Account into another **BISCAYNE MILIEU** account at Bank of America, account number ending in 5339.  **ANTONIO MACLI** and **JORGE MACLI** were joint signors on the 5339 account.

7.     **ANTONIO MACLI** and **JORGE MACLI** transferred a large portion of the fraudulent Medicare proceeds from **BISCAYNE MILIEU's** Bank of America account ending in 5339 to Quality Care's Bank of America account ending in 8342.  **ANTONIO MACLI** and **JORGE MACLI** were joint signors on the 8342 account.

8.     **ANTONIO MACLI** and **JORGE MACLI** transferred the fraudulent Medicare proceeds from Quality Care's Bank of America account ending in 8342 to themselves, **SANDRA**

**HUARTE,** and others.

9.      **ANTONIO MACLI** and **JORGE MACLI** also transferred a large portion of the fraudulent Medicare proceeds from **BISCAYNE MILIEU's** Bank of America account ending in 5339 to Global's Bank of America account ending in 9188.  **ANTONIO MACLI** and **JORGE MACLI** were joint signors on the 9188 account.

10.     **ANTONIO MACLI** and **JORGE MACLI** transferred the fraudulent Medicare proceeds from Global's Bank of America account ending in 9188 to themselves, **SANDRA HUARTE,** and others directly, and indirectly through Quality Care's account at Bank of America ending in 8342.

11.     **ANTONIO MACLI** and **JORGE MACLI** further transferred a large portion of the fraudulent Medicare proceeds from **BISCAYNE MILIEU's** Bank of America account ending in 5339 to North Biscayne's CNB Bank account ending in 6632.  **SANDRA HUARTE** was the sole signor on the 6332 account.

12.     **SANDRA HUARTE** transferred the fraudulent Medicare proceeds from North Biscayne's CNB Bank account ending in 6632 to herself, **ANTONIO MACLI, JORGE MACLI** and others.  On documents filed with Medicare, **ANTONIO MACLI** listed North Biscayne as the "landlord" for **BISCAYNE MILIEU,** despite the fact that North Biscayne did not own the property being leased by **BISCAYNE MILIEU.  BISCAYNE MILIEU** had, in reality, a different landlord not affiliated with North Biscayne, **ANTONIO MACLI, JORGE MACLI or HUARTE.**

13.     **ANTONIO MACLI** and **JORGE MACLI** transferred a large portion of the fraudulent Medicare proceeds from **BISCAYNE MILIEU's** Bank of America account ending in 5339 to **ANTONIO MACLI's** and **JORGE MACLI's** Bank of America personal joint account

ending in 7085.  **ANTONIO MACLI** and **JORGE MACLI** subsequently transferred a portion of the fraudulent Medicare proceeds from their personal joint account ending in 7085 to Tekboard's Bank of America account ending in 3153.

All in violation of Title 18, United States Code, Section 1956(h).

**COUNTS 31 - 37**
**Money Laundering**
**(18 U.S.C. § 1957)**

On or about the dates set forth below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants listed below did knowingly engage and attempt to engage in monetary transactions, affecting interstate commerce, by, through, and to a financial institution, in criminally derived property of a value greater than $10,000, and such property having been derived from specified unlawful activity, as more specifically described below:

| Count | Approx. Date | Defendant(s) | Monetary Transaction |
|---|---|---|---|
| 31 | 12/28/09 | **ANTONIO MACLI and SANDRA HUARTE** | Negotiated check number 4950 made out to North Biscayne Investment, Inc. in the amount of $19,973.32 from **BISCAYNE MILIEU's** Bank of America account ending in 5339 |
| 32 | 12/29/09 | **ANTONIO MACLI and JORGE MACLI** | Wire transferred $400,000 from **BISCAYNE MILIEU's** T.D. Bank account ending in 6063 to Quality Care's Bank of America account ending in 8342 |
| 33 | 12/30/09 | **ANTONIO MACLI and JORGE MACLI** | Negotiated check number 4955 made out to Global Management Network, Inc. in the amount of $42,500 from **BISCAYNE MILIEU's** Bank of America account ending in 5339 |
| 34 | 12/31/09 | **SANDRA HUARTE and ANTONIO MACLI** | Negotiated check number 7892 made out to **HUARTE** in the amount of $100,000 from Quality Care's Bank of America account ending in 8342 |

31

| Count | Approx. Date | Defendant(s) | Monetary Transaction |
|-------|------|--------------|----------------------|
| 35 | 5/5/10 | **ANTONIO MACLI and JORGE MACLI** | Negotiated check number 5260 made out to Quality Care in the amount of $210,000 from **BISCAYNE MILIEU's** Bank of America account ending in 5339 |
| 36 | 5/12/10 | **ANTONIO MACLI** | Negotiated check number 5270 made out to **ANTONIO MACLI** in the amount of $300,000 from **BISCAYNE MILIEU's** Bank of America account ending in 5339 |
| 37 | 6/16/10 | **ANTONIO MACLI and JORGE MACLI** | Transferred $70,000 from **BISCAYNE MILIEU's** Bank of America account ending in 5339 to **JORGE MACLI** and **ANTONIO MACLI's** Bank of America account ending in 7085 |

It is further alleged that the specified unlawful activity is health care fraud, in violation of Title 18, United States Code, Section 1347.

In violation of Title 18, United States Code, Sections 1957 and 2.

### COUNTS 38-44
**Money Laundering**
**(18 U.S.C. § 1956(a)(1)(B)(i))**

On or about the dates set forth below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants listed below did knowingly conduct financial transactions, affecting interstate commerce, involving the proceeds of specified unlawful activity, knowing that the property involved in the financial transactions represented proceeds of some form of unlawful activity, and knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, as more specifically described below:

| Count | Approx. Date | Defendant(s) | Monetary Transaction |
|---|---|---|---|
| 38 | 12/28/09 | **ANTONIO MACLI and SANDRA HUARTE** | Negotiated check number 4950 made out to North Biscayne Investment, Inc. in the amount of $19,973.32 from **BISCAYNE MILIEU's** Bank of America account ending in 5339 |
| 39 | 12/29/09 | **ANTONIO MACLI and JORGE MACLI** | Wire transferred $400,000 from **BISCAYNE MILIEU's** T.D. Bank account ending in 6063 to Quality Care's Bank of America account ending in 8342 |
| 40 | 12/30/09 | **ANTONIO MACLI and JORGE MACLI** | Negotiated check number 4955 made out to Global Management Network, Inc. in the amount of $42,500 from **BISCAYNE MILIEU's** Bank of America account ending in 5339 |
| 41 | 12/31/09 | **SANDRA HUARTE and ANTONIO MACLI** | Negotiated check number 7892 made out to **HUARTE** in the amount of $100,000 from Quality Care's Bank of America account ending in 8342 |
| 42 | 5/5/10 | **ANTONIO MACLI and JORGE MACLI** | Negotiated check number 5260 made out to Quality Care in the amount of $210,000 from **BISCAYNE MILIEU's** Bank of America account ending in 5339 |
| 43 | 5/12/10 | **ANTONIO MACLI** | Negotiated check number 5270 made out to **ANTONIO MACLI** in the amount of $300,000 from **BISCAYNE MILIEU's** Bank of America account ending in 5339 |
| 44 | 6/16/10 | **ANTONIO MACLI and JORGE MACLI** | Transferred $70,000 from **BISCAYNE MILIEU's** Bank of America account ending in 5339 to **JORGE MACLI** and **ANTONIO MACLI's** Bank of America account ending in 7085 |

It is further alleged that the specified unlawful activity is health care fraud, in violation of Title 18, United States Code, Section 1347.

In violation of Title 18, United States Code, Sections 1957 and 2.

33

## FORFEITURE ALLEGATIONS
### (18 U.S.C. § 982)

1.      The allegations contained in the General Allegations of this Superseding Indictment and in Counts 1 through 44 of this Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendants,

**ANTONIO MACLI,**
**JORGE MACLI,**
**SANDRA HUARTE,**
**GARY KUSHNER,**
**RAFAEL ALALU,**
**JACQUELINE MORAN,**
**DEREK ALEXANDER,**
**ANTHONY ROBERTS,**
**CURTIS GATES,**
**MADELINE LUCAS,**
**and**
**BISCAYNE MILIEU HEALTH CENTER, INC.,**

have an interest.

2.      Upon conviction of a violation of, or a conspiracy to violate, Title 18, United States Code, Section 1347, as alleged in Counts 1 through 14 of this Superseding Indictment, or a violation of, or a conspiracy to violate, Title 42, United States Code, Section 1320a-7b, as alleged in Counts 15 through 29 of this Superseding Indictment, the defendant so convicted shall forfeit all of his or her respective right, title and interest in any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of such violation, pursuant to Title 18, United States Code, Section 982(a)(7).

3.      Upon conviction of a violation of Title 18, United States Code, Section 1956 or 1957, as alleged in Counts 30 through 44 of this Superseding Indictment, the defendant so convicted shall forfeit all of his or her respective right, title and interest in any property, real or

personal, involved in such violation, or any property traceable to such property, pursuant to Title 18, United States Code, Section 982(a)(1).

4.      The property which is subject to forfeiture includes, but is not limited to, the following:

(a)      A sum of money equal in value to the property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of, or the conspiracy to commit, a Federal health care offense, as alleged in this Superseding Indictment, which the United States will seek as a forfeiture money judgment against each defendant so convicted, jointly and severally, as part of their respective sentence; and

(b)      A sum of money equal in value to the property, real or personal, involved in the commission of, or the conspiracy to commit, a money laundering offense, as alleged in this Superseding Indictment, or the property traceable to such property, which the United States will seek as a forfeiture money judgment against each defendant so convicted, jointly and severally, as part of their respective sentence.

All pursuant to Title 18, United States Code, Sections 982(a)(1) and (a)(7) and the procedures outlined at Title 21, United States Code, Section 853, as made applicable by Title 18, United States Code, Section 982(b)(1).

A TRUE BILL,

FOREPERSON

WIFREDO A. FERRER
UNITED STATES ATTORNEY

ALICIA E. SHICK
ASSISTANT UNITED STATES ATTORNEY

36

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: ANTONIO MACLI

**Case No**: 11-20587-CR-SCOLA(s)

Count #: 1

Conspiracy to Commit Health Care Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty**        10 years' imprisonment

Counts #: 2 - 14

Health Care Fraud

Title 18, United States Code, Section 1347 and 2

**\*Max. Penalty:**        10 years' imprisonment as to each count

Count #: 15

Conspiracy to Receive and Pay Health Care Kickbacks

Title 18, United States Code, Section 371

**\*Max. Penalty:**        5 years' imprisonment

Counts #: 16 - 26

Payment of Kickbacks in Connection with a Federal Health Care Program

Title 42, United States Code, Section 1320a-7(b)(2)(A)

**\*Max. Penalty:**        20 years' imprisonment as to each count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: ANTONIO MACLI

**Case No**: 11-20587-CR-SCOLA(s)

Counts #: 16 - 26

Payment of Kickbacks in Connection with a Federal Health Care Program

Title 42, United States Code, Section 1320a-7b(b)(2)(A)

**\* Max. Penalty**:        5 years' imprisonment as to each count

Count # 30

Conspiracy to Commit Money Laundering

Title 18, United States Code, Section 1956(h)

**\* Max. Penalty**:        20 years' imprisonment


Counts # 31-37

Money Laundering

Title 18, United States Code, Section 1957

**\* Max. Penalty**:        10 years' imprisonment as to each count

Counts # 38-44

Money Laundering

Title 18, United States Code, Section 1956(a)(1)(B)(i)

**\* Max. Penalty**:        20 years' imprisonment as to each count

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA

<u>PENALTY SHEET</u>

**Defendant's Name**: JORGE MACLI

**Case No**: 11-20587-CR-SCOLA(s)

Count #: 1

Conspiracy to Commit Health Care Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty**:          10 years' imprisonment

Counts #: 2 - 14

Health Care Fraud

Title 18, United States Code, Section 1347 and 2

**\*Max. Penalty:**          10 years' imprisonment as to each count

Count #: 15

Conspiracy to Receive and Pay Health Care Kickbacks

Title 18, United States Code, Section 371

**\*Max. Penalty:**          5 years' imprisonment

Counts #: 16 - 26

Payment of Kickbacks in Connection with a Federal Health Care Program

Title 42, United States Code, Section 1320a-7(b)(2)(A))

**\*Max. Penalty:**          5 years' imprisonment as to each count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: JORGE MACLI

**Case No**: 11-20587-CR-SCOLA(s)

Counts #: 16 - 26

Payment of Kickbacks in Connection with a Federal Health Care Program

Title 42, United States Code, Section 1320a-7b(b)(2)(A)

* **Max. Penalty**:      5 years' imprisonment as to each count

Count # 30

Conspiracy to Commit Money Laundering

Title 18, United States Code, Section 1956(h)

* **Max. Penalty**:      20 years' imprisonment

Counts # 32, 33, 35

Money Laundering

Title 18, United States Code, Section 1957

* **Max. Penalty**:      10 years' imprisonment as to each count

Counts # 39, 40, 42, 44

Money Laundering

Title 18, United States Code, Section 1956(a)(1)(B)(i)

* **Max. Penalty**:      20 years' imprisonment as to each count

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

<u>PENALTY SHEET</u>

**Defendant's Name**: <u>SANDRA HUARTE</u>

**Case No**: 11-20587-CR-SCOLA(s)

Count #: 1

Conspiracy to Commit Health Care Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty**:        10 years' imprisonment

Counts #: 2 - 14

Health Care Fraud

Title 18, United States Code, Section 1347 and 2

**\*Max. Penalty:**        10 years' imprisonment as to each count

Count #: 15

Conspiracy to Receive and Pay Health Care Kickbacks

Title 18, United States Code, Section 371

**\*Max. Penalty:**        5 years' imprisonment

Count #: 30

Conspiracy to Commit Money Laundering

Title 18, United States Code, Section 1956(h)

**\*Max. Penalty:**        20 years' imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name**: SANDRA HUARTE

**Case No**: 11-20587-CR-SCOLA(s)

Counts # 31, 34

Money Laundering

Title 18, United States Code, Section 1957

**\* Max. Penalty**:        10 years' imprisonment as to each count

Counts # 38, 41

Money Laundering

Title 18, United States Code, Section 1956(a)(1)(B)(i)

**\* Max. Penalty**:        20 years' imprisonment as to each count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name**: GARY KUSHNER

**Case No**: 11-20587-CR-SCOLA(s)

Count #: 1

 Conspiracy to Commit Health Care Fraud

 Title 18, United States Code, Section 1349

**\* Max. Penalty**:        10 years' imprisonment

Counts #: 2 - 14

 Health Care Fraud

 Title 18, United States Code, Section 1347 and 2

**\*Max. Penalty:**        10 years' imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name**: RAFAEL ALALU

**Case No**: 11-20587-CR-SCOLA(s)

Count #: 1

Conspiracy to Commit Health Care Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty**:        10 years' imprisonment

Counts #: 3, 4, 9 - 11, 13

Health Care Fraud

Title 18, United States Code, Section 1347 and 2

**\*Max. Penalty:**        10 years' imprisonment as to each count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: JACQUELINE MORAN

**Case No**: 11-20587-CR-SCOLA(s)

Count #: 1

Conspiracy to Commit Health Care Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty**:      10 years' imprisonment

Count # 3

Health Care Fraud

Title 18, United States Code, Section 1347 and 2

**\* Max. Penalty**:      10 years' imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:** MADELINE LUCAS

**Case No:** 11-20587-CR-SCOLA(s)

Count #: 1

Conspiracy to Commit Health Care Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty:**      10 years' imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**