UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLO9RIDA

CASE NO. 11-20587-CR-SCOLA(s)

UNITED STATES OF AMERICA

vs.

MADELINE LUCAS,

       Defendant.

_____/

### AGREED FACTUAL BASIS FOR GUILTY PLEA

### Biscayne Milieu Scheme:

    From approximately July 2009, and continuing through approximately early December 2010, the defendant MADELINE LUCAS, knowingly and willfully conspired and agreed with others to commit health care fraud in violation of 18 U.S.C. § 1349.

    MADELINE LUCAS, a Licensed Mental Health Counselor (LMHC), worked as a therapist for Biscayne Milieu Health Center, Inc. ("Biscayne Milieu"). LUCAS would conduct group therapy sessions for the patients attending Biscayne Milieu, however, most of the patients attending Biscayne Milieu's PHP did not qualify for PHP treatment. Indeed, Biscayne Milieu admitted patients that suffered from Alzheimer's disease and dementia, who did not qualify for PHP treatment. Nonetheless, these patients were admitted to the program by Dr. Gary Kushner and others and Biscayne Milieu submitted claims to Medicare for their alleged "treatment."

    LUCAS knew that many of the other patients admitted to Biscayne Milieu likewise did not qualify for PHP treatment because they were either currently under the influence of an illegal narcotic substance and/or they were not in an acute phase of a mental illness. The lion's share of Biscayne Milieu's patients were recruited by so-called "Case Managers." Many of the patients recruited by the "Case Managers" were recruited from outside the State of Florida and brought here to live in houses managed and operated by the "Case Managers."

    LUCAS also knew that most of the patients attending Biscayne Milieu were drug addicts who were not suffering from an acute phase of any mental illness at the time of their admission. Additionally, many of the patients attending Biscayne Milieu were "recycled," or patients that continued to be admitted regularly to the program.

    A portion of the patients attending Biscayne Milieu that likewise did not qualify for PHP treatment because they were not in an acute phase of a mental illness consisted of a group of Haitian individuals. The vast majority of these patients did not have any prior mental illness

diagnosis prior to being recruited to attend Biscayne Milieu's PHP. Moreover, the vast majority of these patients had the same diagnosis of Major Depression. Biscayne Milieu provided an incentive for these patients to attend the program by assisting them with their United States citizenship. Indeed, LUCAS and others were directed to assist in filling-out the immigration forms for some of the Haitian patients at Biscayne Milieu, falsely and fraudulently indicating that the patients had mental illnesses, which enabled the Haitian patients to avoid taking their citizenship tests.

In addition to the inappropriate patients at Biscayne Milieu, LUCAS, and the other therapists, were often instructed to create fraudulent therapy notes for patients that did not, in fact, attend the therapy sessions as billed to Medicare by Jacqueline Moran and/or Sandra Huarte. Indeed, LUCAS had on occasion fraudulently documented group therapy notes for some of Biscayne Milieu's patients by simply cutting and pasting notes and patient quotations from other patients' group therapy notes that she had drafted. Consequently, LUCAS' notes for some of these patients were fraudulent as they did not reflect the treatment of the individual patient she was representing to have counseled and evaluated. LUCAS also on occasion had paid another Biscayne Milieu therapist to create fraudulent therapy notes for patients that LUCAS represented she had drafted. Likewise, LUCAS received money from another therapist to fraudulently create his therapy notes. The fraudulent health care scheme which LUCAS participated in at Biscayne Milieu involved sophisticated means.

Between July 2009 and early December 2010, Biscayne Milieu billed Medicare approximately $12.9 million. As a result of those submissions, Medicare paid Biscayne Milieu approximately $5.1 million. LUCAS knew that Biscayne Milieu would bill Medicare for the inappropriate patients and for services not actually rendered.

The preceding statement is a summary, made for the purpose of providing the Court with a factual basis for my guilty plea to the charges against me. It does not include all of the facts known to me concerning criminal activity in which I and others engaged. I make this statement knowingly and voluntarily and because I am in fact guilty of the crimes charged.

DATE: 6/27/12

MADELINE LUCAS
Defendant

DATE: 6/27/12

STEVEN HAGUEL, ESQ.
Attorney for Defendant

DATE: 6/27/12

ALICIA E. SHICK
Assistant United States Attorney

2